First case on the docket this morning is number 5190314 Sunnybrook LP v. City of Alton. Fellas, you may proceed. Good morning, your honors. If it may please the court, I, Brian Trump, will be appearing on behalf of the defendant appellant, City of Alton, Illinois. Today, we are asking the court to vacate two orders entered by the circuit court and to dismiss the action with prejudice. At its core, this case is about the circuit court supervising and determining defendant's administrative proceedings, substituting its judgment for that of the City of Alton's, and doing so without any apparent reason. Accordingly, defendant presents four issues on appeal. Whether the circuit court lacked subject matter jurisdiction at all relevant times in entering those orders, whether the circuit court award a mandamus relief to the plaintiff, Sunnybrook LP, a registered Illinois Limited Partnership, whether the trial court's reversal of defendant's discretionary actions and factual findings was warranted, and whether the trial court erred in holding the defendant in contempt for failing to issue a building permit to the plaintiff, Sunnybrook LP, pursuant to the order entered on June 5th. With these four issues identified, and without rehashing the facts stated at length within the party's briefs, it may help the court's analysis to keep three ultimate facts in mind. Number one, the City of Alton had received three applications relating to a proposed development known as the Sunnybrook development. Number two, Plaintiff Sunnybrook LP was never a party to any administrative proceeding or communication with the City until it filed this lawsuit. Number three, all three applications were materially deficient and failed to comply with the City Code when submitted. In other words, Plaintiff has submitted its arguments and alleges that it should be excused from having to adhere to the and apply for the administrative remedies provided by the City's Code, including the eventual judicial review pursuant to the administrative review law. This argument is non-tenable, and that is because Plaintiff was never even a party to any application for a building permit prior to filing this lawsuit. Furthermore, the Circuit Court entered the June 5th, 2019 order awarding mandamus relief specifically on the third and final application for building permit, which was submitted 11 days after Plaintiff filed this action. Accordingly, it would have been impossible for a defendant to have had an obligation to issue a building permit on the non-existent application at the time this lawsuit was filed. Similarly, Plaintiff has claimed that the uncontroversial evidence shows that the application submitted had complied with the City Code. This is apparently false, and patently so based on the language within the June 5th, 2019 order, which specifically references the November 16th, 2018 application, again submitted 11 days after the lawsuit was filed, and further references that it is issuing the mandamus relief on that application as amended thereafter. And finally, Plaintiff has provided an extensive factual history within the appellee's brief that bears absolutely, that has absolutely no bearing on the Plaintiff's Sunnybrook LP. Plaintiff's Sunnybrook LP did not come into existence until May 30th, 2018. That is approximately two months before the first application for a building permit was submitted. However, the first application for a building permit does not reference Sunnybrook LP whatsoever. Instead, it references a 2B form-limited partnership, which evidences two things. One, that the actual applicant, Brian Morrissey, on behalf of Morrissey Construction, was apparently unaware that Sunnybrook LP existed. And two, the description within that application is patently incongruent with the fact that Sunnybrook LP already existed. Counsel, was Morrissey an agent of Sunnybrook? I don't believe so, Your Honor. There is no evidence in the record that supports that. All correspondence between the City of Alton, including with Brian Morrissey, involves a different entity and different parties to the administrative proceeding, including amongst those an entity known as EJJ LLC, which has a similar ownership group as Sunnybrook LP. However, that does not make those two entities one and the same. Accordingly, the defendant asserts that subject matter jurisdiction has been lacking at all relevant times. This action was initiated on November 15, 2018, by the plaintiff, Sunnybrook LP, filing a lawsuit seeking declaratory and injunctive relief, and therein expressly requesting that the circuit court reverse determinations made by the City of Alton. Thus, even though this complaint was titled as such for declaratory relief and injunctive relief, it necessarily is substantively one for judicial review of the City of Alton's actions. And again, emphasizing on the fact that the initial complaint focused on the first application submitted on July 31, 2018, which defendant had expressly denied three weeks after its submittal, citing a litany of deficiencies within its civil engineering plans, as well as issues relating to the zoning ordinance. Now, in its appellee brief, the plaintiff appellee has focused on the application submitted on November 2, 2018, and the application submitted on November 16, 2018. November 2, 2018 was a Friday, and the application was submitted that afternoon. On Monday, November 5, the plaintiff filed this lawsuit. It is virtually impossible, but at the very least unreasonable and impractical, to have expected defendant to have issued a new final decision on the application submitted on November 2, 2018, by Monday. Furthermore, the one submitted on November 16, 2018, again, did not exist when this lawsuit was filed. The record is also clear that neither plaintiff nor any other person or entity which was actually a party to the prior administrative proceedings pursued its administrative remedies. The City of Alton's, the City Code for the City of Alton expressly provides for appeals of decisions relating to the zoning ordinance to a Board of Appeals. Any party adversely affected by a final decision of the Board of Appeals may pursue a judicial review pursuant to the administrative review law. That is expressly stated in Title 11 in Chapter 13 at Section 6. Furthermore, the complaint cannot be construed in order to allege an action pursuant to the ARL because the complaint is patently fails to satisfy the requisites for such an action. It was not timely filed within 35 days of a final administrative decision. If we are referencing the final administrative decision on the first application on August 21, 2018, it would have been more than 70 days since that decision. Counsel, I believe in the opposing brief they argue that the administrative review law doesn't apply. Has this been ever adopted? Yes, Your Honor. I've noticed that and I've also identified that in our reply brief as well as our motion to sanction and strike the appellee's brief. Frankly, that statement is patently false. The section that I just cited, 1113.6, expressly refers, incorporates the Administrative Review Act, which of course was the predecessor to the Administrative Review Law. Section 101, sorry, Section 102 of the current Administrative Review Law expressly states that it applies to any ordinance that incorporated the prior act. Moreover, even if the ARL were held to not apply here, the method for judicial review would be the common law writ of certiorari. That would, and it would again preclude declaratory relief, injunctive relief, or mandamus relief. LLN case law is very clear on the fact that mandamus relief in particular cannot be used for judicial review and reversal of an administrative decision, which is exactly what's happened here. In order to get to the mandamus relief awarded, the circuit court had to first reverse the City of Alton's determination regarding the applicability of what's known as the planned development procedures or the suitability for the proposed development within the zoning district of the subject property. The City of Alton had maintained that it could be allowed if the PD procedures were adhered to. The circuit court determined that the PD procedures were not required. Again, LLN case law is very clear that mandamus cannot be used to reverse an administrative determination. It is only used to enforce a vested right. Now, I've in our briefs cited the Solomon case. What the Solomon case holds is the time for determination regarding whether a party is entitled to mandamus relief is at the time that the application is submitted. This was critical in the hearing held on May 31st, 2019, and in the resultant order issued on June 5th, 2019, which is the subject of this appeal. Prior to that, the court had supervised the administrative proceeding on the application submitted during the pendency of this lawsuit, and it required and observed the City of Alton submit to the plaintiff appellee or rather to the applicants feedback from independent consultants get hired by the City of Alton. Regarding the sufficiency of the application and the building plans, the plaintiff or the applicants then responded with revised applications and construction documents. Accordingly, plaintiff could not have been entitled to mandamus at the time that this lawsuit was filed. One, because the application did not even exist at the time that the lawsuit was filed, but two, when the application was eventually submitted, it was deficient and failed to comply with the city code as evidenced by the revisions submitted during the pendency of this lawsuit. Accordingly, furthermore, defendant's conclusions regarding the sufficiency of the application should have been assuming should have been evaluated by the circuit court under a manifest way of the evidence standard setting aside for a moment the jurisdictional arguments presented previously. Deficient conclusions that the PDP applied was based upon the development being on a single tract of land, being developed as a single unit, and being developed under a single ownership or unified control. And then the city also found that it had either or both two or more principal buildings upon the lot or tract of land or two or more uses. The proposed plan would have ten sets of four contiguous or attached townhomes for a total of 40 single family units. Accordingly, there are clearly more than two principal buildings on the lot as each of those single family dwellings would be used for single family purposes. The tract of land would also feature a building used for administrative purposes and community purposes. This was one area where the defendant's consultants found the building plans materially deficient. The plans for the building had failed to adhere to the codes for commercial purposes and the codes for non-commercial purposes. Thus, the city concluded that there are two or more uses for the land as well as two or more principal buildings on the land. The R4 district is the city's multifamily district. It does not, however, permit four contiguous townhomes to be developed on a lot. And again, in this situation, there were ten sets of four contiguous townhomes being developed on a single lot. I have also referred to these as townhomes and plaintiff has maintained that these buildings are not townhomes but in fact multifamily dwellings. This argument advanced by plaintiff is unique to plaintiff. The other applicants, including the architects and the Ryan Morrissey of Morrissey Construction, have all identified these buildings expressly as townhomes or townhouses. And particularly, townhomes and townhouses are governed by an entirely different set of building codes rather than multifamily dwellings. The plans submitted all allege to be compliant with townhomes, not multifamily dwellings. This again gets into R4 district restricts having four contiguous townhomes within it on a single lot rather than the provisions within the R district relating to multifamily dwellings. So for those reasons, the defendant's findings were not against the manifest way of the evidence. And finally, the defendant was found in contempt of court on June 27th for failing to abide by the order dated June 5th, 2019, which issued the written mandamus requiring the defendant to issue the building permit to the plaintiff. Defendant maintains that the circuit court lacks subject jurisdiction. Accordingly, the June 5th, 2019 order was void and defendant cannot be held in contempt for failing to abide by a void order. Furthermore, defendant had filed a motion for reconsideration, which asked the court to review and vacate the June 5th, 2019 order. Pursuant to 735 ILCS 5-2-1203B, a timely file motion to reconsider automatically stays the execution of a writ of mandamus. There are only three exceptions within that rule, none of which are present here. Most notably, it accepts that from declaratory orders regarding declaratory relief and injunctive relief, it does not apply to mandamus. Do you cite any case law that does not apply to injunctive relief? Your Honor, I did not find this case specifically on that issue. What I have found are cases where it has discussed the three types of injunctive relief that Illinois has, which would be TRL, preliminary injunction, or permanent injunction, that does not include mandamus relief. Also, it may be observed that the civil code has different sections specifically pertaining to mandamus or injunctive relief. Within those sections, it also has provision that says the failure to identify the proper form of relief would not be fatal to a complaint if it were so deserving of the other. In other words, if you ask for injunctive relief but mandamus was the appropriate remedy, the court could construe that complaint to include the appropriate remedy. Notably also, plaintiff's own second amended complaint asked for mandamus relief in count three and injunctive relief in count four. Again, acknowledging the distinction between the two. If you look at the legislative history further, you'll see that the purpose for the amendment in 1203B was actually to prevent a defendant delaying the execution of an order granting declaratory relief or injunctive relief by the filing of a motion for reconsideration. Specifically, that defendant contemplated within the legislative history was a municipality or a government entity. Accordingly, mandamus was very intentionally left out of that amendment. Mandamus, of course, being directed towards a municipality and this amendment being intentionally drafted and put forth in order to help government entities enforce their orders. Thank you, Counselor. You'll have an opportunity to leave. Thank you. Thank you. I believe you may proceed. That's all right. That's all right. Okay. May it please the Court and Counsel. My name is Andrew Corrella. I'm with the firm Heppler Broom over in Edwardsville. I'm appearing before you today on behalf of the plaintiff, Appellee Sunnybrook, L.P., the developer for the proposed community of Sunnybrook residential project in the city of Alton. Before getting into my presentation, just to address a question Justice Overstreet had of counsel as to Morrissey Construction being an agent, there's actually an affidavit signed by Ryan Morrissey attached to a pleading that's in the record where he identifies himself as an agent of Morrissey in that the initial building permit application was filed on behalf of Morrissey in the record and with an affidavit that was in the record prior to Judge Dugan, who was the trial court judge in this matter, entering summary judgment in favor of the plaintiff. So they were acting as an agent of Morrissey. But to take some of counsel's points, I just want to tell you a little bit more about the project. This is to be, as counsel indicated, a residential development located within the city of Alton. It is a low-income housing development with funding awarded through the Illinois Housing Development, IDA, in Chicago. It is because IDA recognized that there was a need for low-income housing opportunities in the city of Alton, and that is why the developers put this project together and have tried now for a period of two years, actually going on three years, to get this going. And I wanted to clear up a few things. First, the plaintiff did file three different building permit applications. The first one was filed in July 2018. This is the application that the defendant, the city of Alton, has claimed that should have been appealed and that the plaintiff should avail itself of some poorly defined, frankly, administrative process before taking this dispute to the circuit court. They denied that building permit application. The plaintiff did not appeal it internally. And by the way, we take the position that there really is no clearly defined process in Alton City Code for there to be an internal appeal process. That building permit application was abandoned. The developers went back to the drawing board, made some changes, and then on November 16, 2018, they filed the third and final building permit application, which is the only building permit application that is the subject of this lawsuit and is present before the court today. That initial building permit application was abandoned. They went back, made a lot of changes, and just filed a fresh building permit application. And the party that filed it was Sunnybrook. I think there was a representation that I heard that Sunnybrook was not the applicant. Right there on the application in the record as C468 is a copy of Sunnybrook's application, the November 16th application, clear as day. It says the applicant's name is Sunnybrook LP. It was a party, so it was a proper party to this litigation. This matter started a few weeks prior to the filing of that third building permit application as a DJ case. There had been some disagreement between the City of Alton and the developers as to whether the developers would have to seek a subdivision plaque. The developers didn't think so. Alton was insisting, so this case started as a DJ. The second amendment complaint, which included count three for mandamus, was not filed until February, which was three months after the building permit was filed. So the timeline here fits. The lawsuit was filed. The building permit was filed, the one that's the subject of this litigation. And then a few months later, after no action at all on that building permit application from the City of Alton, Sunnybrook felt that it had no choice but to seek relief from the court. There was a lot of conversation there about some administrative proceeding. I want to address that. As indicated a moment ago, and I have Alton's code right here, the administrative review law has been adopted. I think there was representation that we made some false statement in our brief that they had not adopted ARL when, in fact, they have. No, in our brief, we clearly state that while the City of Alton did adopt ARL in its zoning code, in the building code, it did not adopt ARL. And, of course, what we filed was a building permit application. So to the extent that they would have taken some action or made some decision as to our building permit application, and if, assuming if, they had some legitimate internal appeals process, it would have been through the building code, not the zoning code. So when we say that there's no administrative review laws, it's right there. And, of course, it's in the record. And they have not adopted ARL. The zoning, I'm sorry, the building code and the zoning code are a little confusing as to a review process at all. It talks about appealing decisions of the code official, the building code official, of the building inspector. Now, there is a process for appealing decisions made by that individual, and it's in the building code. Now, and they have some building board of appeals. But whether or not they have a, so to the extent that there would have been something for us to do internally, it would have come had they made a decision in the building code, not the zoning code. The zoning code, the zoning administrator essentially made no decision, and it's a building permit request. The person administratively who has the ability to render decisions on building permit applications is the building inspector, the building code official. So that person never made a decision. And that brings me to the overall theme of this case when it came to how Alton dealt with Sunnybrook, delay, deny, and hopefully, in the hopes that either Sunnybrook would go away or more likely, and this was a real threat, it remains a real threat, that Sunnybrook will lose its funding source. These are tax credits that are available for development like this. There's 10 or so of them across the state of Illinois. They are operated in partnership with the Laborers Home Development Corporation, which is a division of the Laborers International. Laborers, they operate them, I believe there's one in Franklin County. It's a competitive process. And if you can't or don't use the tax credits, you're going to lose them because it's going to go to a different project. They're well aware of that. We have affidavits in the record signed by the developer in this case, the lead developer, Dr. Ed Hightower, where he discusses the potential threat for losing our funding if some action is not taken on this. And frankly, if we don't get a building permit in the next some months, later this year at latest, we are again at risk of losing it. Fortunately, they've been patient and they've allowed us to swap out the tax credits for last year to this year. But it remains a concern. They're aware of that. So their attitude and posture throughout this whole matter has been to delay. As to the building permit application following November 16th, they took no action. To the extent that they had any internal process of review that we should have availed ourselves of, that process would not be triggered until they make a decision. Just like any other administrative review matter, the 35-day period on which you can seek administrative relief starts when you get served with some written decision or some final decision. Notably, the City of Alton never made a final decision on this building permit application. To this date, they've never made a decision. They didn't grant it. Of course, if they granted it, it wouldn't be here. They didn't deny it, certainly. To the extent they claim that Judge Dugan did not have a subject matter jurisdiction, that's just not possible because they did not make any decision. That was the theme of this matter. In fact, we filed our building permit application in November of 2018. After three months passed, we don't get a response. Most of the time, we got some feedback from their engineer, who gives it the all-clear. He says, well, from the engineer, I think it looks good. But we've had no review to date on the actual building plans, which is the meat of a building permit application for a development like this. They hadn't done anything. No decision had been made. So we sought mandamus relief to compel them to make a decision. And in the absence of a decision, to make that decision for them. Because whether a city or whether any other administrative agency, they can't just sit on their hands and not take action. In the paper now, we read cases of the Illinois State Police not timely making decisions on FOIA card applications. An administrative agency, at some point, loses its ability. When it just sits on its hands, it makes no decision at all. And unfortunately, that's what happened here. I did a FOIA request about the same time that I filed the mandamus count. And 112, this is all on record, 112 building permit applications had been filed, since August 5th, came and went. They granted all of them, no issue at all. But they had not yet, by that point, even touched our building plans. You had mentioned that the relief you sought from the circuit court was, through the mandamus, was to force Alton to make a decision. And in the absence of a decision made by Alton, the court would make the decision itself. Does mandamus allow the court to do that under those circumstances? I mean, isn't mandamus only for the court to force Alton's hand? And if they don't force Alton's hand, then hold them in contempt, I think, as Judge Duggan did? But to go so far as to take on those administrative roles and make those decisions, you're suggesting that the court does have that authority? Well, yes and no. The court does not have the ability to take away their discretion or to make an administrative decision. But when they completely fail to do anything at all, they do have a role. And that's what I'm asking. They compel you to make a decision, and then even then they refuse to make the decision. So just to play it out, in February of 2019, we filed our mandamus count because they hadn't taken any action, hadn't even reviewed our building plans. It wasn't until Judge Duggan, so later on we filed a motion for summary judgment that was set for hearing initially on March 27th. And then they asked for more time to file a response to the motion for summary judgment. The judge gave it to them, resetting our hearing for April 24th, nearly a month later, giving them until April 17th to file a response to our motion for summary judgment and any counter-affidavits. April 17th came and went. They did not file a response to our motion for summary judgment. We have affidavits in the file on which Judge Duggan relied in confirming issues like standing and entitlement to the relief that we were seeking. They filed no counter-affidavits. So Judge Duggan, on April 24th, determines that, based upon what's in the record in front of them, trial court judges can only go off of what's in the record in front of them, gave them an opportunity, as they requested, to file a response, to put up some evidence in response to countering what we were putting out there. Despite that request and despite the opportunity, they failed to do so. So what did Judge Duggan do? He determined, based upon what was in the record, that the plan development procedure did not apply to us. And as to the building plans, I asked for relief. And what was the reasoning behind the plan development not applying to Santa Rosa? Well, first, whether it's a PDP or a PRD or a PUD, a plan development is typically used as a development tool by developers. It's usually used by developers when they want to put in something that doesn't squarely fit within any zoning district, rather than used as a hammer by a municipality. So just in the whole sense of the word, it's not something that I've ever seen a municipality force on somebody, especially when, as in this case, the zoning we had, multifamily residential, is exactly what we needed. So the PDP process, and they have a PDP chapter in their code, and nowhere in this chapter does it appear to apply to us. What they're relying on is a definition in zoning code of a plan development procedure that defines a plan development procedure, as counsel indicated, as a development of two or more principal structures, where there is going to be single ownership and unified control. Well, that was their basis for claiming the right. Judge Dugan disagreed. What he had in the record in front of him, uncontroverted affidavits from Ed Hightower, saying this is what we intend to do. We're going to share ownership, and we're going to share control with the laborers. We also had an affidavit in there from Mike Getz, the former executive director of the Laborers Home Development Corporation, saying we intend to share control and management of this. And that's what Judge Dugan had in front of him, and nothing was in the record to the contrary. Based upon what was in the record in front of Judge Dugan, he frankly entered the only order that he could, which was to bring us through. And actually, he didn't go as far as I wanted. At the time, I wanted a building permit to be issued that day, but Judge Dugan, you know, at this point, we didn't have our building plans reviewed. Now, that wasn't Judge Dugan's fault. That wasn't our fault. It was simply because the city had failed to even, even though they were sitting on someone's desk for five and a half months at that point, they had failed to look at them at all. So they did announce that, they announced at the, with Judge Dugan, and he asked them, what's the building plan? She hadn't looked at them yet. Well, they said, well, we have engaged a consultant to look at them. This is, again, five months after their application has been sitting on someone's desk. The building plan has been sitting on someone's desk. So they engaged a consultant out of the Chicago area, and Judge Dugan says, okay, we're not going to have, and Judge Dugan, in the record, really, he notices and takes issue with the continuing theme of delay in this case, and the city of Baldwin's general inaction with regard, and he expresses frustration, and not only that hearing, but also another hearing, with their general inaction on our building permit application. So he sets in the order. He directs them, okay, fine, you say, and they represent it, we'll have our plans met by May 6th or May 7th, and then, okay, most of you, you have a week or two, your people have a week or two to look at it, and we're going to come back. So on the summary judgment motion, he granted us partial relief on the PDP, saying you don't need to do that, but then he had us come back, and we wound up coming back on May 31, five weeks later, during which they give the parties time to do what usually happens pretty quickly after a building permit is requested, and that's the architects and contractors. They'll talk to each other, and that's exactly what happened. The consultants took over, and by the time we got back in Judge Dugan's courtroom on May 31, the City of Alton conceded. Their building plans fit within our building code, no issue. It was too bad it took us nearlyóit took us over six months to get there, but there we are. The only issue that theyóand even the final issue was the submission of water suppression plans, the sprinkler plans, and the consultants, as agent for Alton, had agreed that you can just submit that later, it's typically submitted during the project anyway, and we'll call that a deferred submitter. Well, they heard that at the hearing and piped up and said, no, no, no, we don't agree with that. We don't agree that you can submit them later. Judge Dugan says, well, you had an agent to negotiate with them, and he agreed, and so you can submit them later. Well, it's a moot point now because we've submitted them, they have them, they've had them for a while now, even though we don't have a building permit, even though the court said it could be a deferred submittal after the building permit's issued, after the project's underway. So that's justóbut that's a moot point. So weóso the court concluded, and counsel, I believe, agreed, at least partially, on the record, that no, that their building plans conform to the building code of the city of Alton, but no, we still won't give them a building permit. And Judge Dugan, having been satisfied at that point, as mandamus requires, that we are entitled toóand there'sóin all the cases we've cited, for mandamus relief, you have to show that you were entitled to the relief that you're seeking, and Judge Dugan was satisfied. You've admitted that theyóthat otherwise the building plans conformed to the building code. I've already decided that the PDP doesn't apply. You've refused to take a flight to giveóto the extent that you hadóthis wasn't in the record, but to the extent that they had aóto the extent that they had some administrative process, they never made a final decision that would have triggered it. So what's a partyówhat's an applicant to do other than to seek relief from the court? And what's a judge to do other than grant that relief, whatever it has shown, without any affidavits presented to the contrary or anything, or any evidence submitted in support of their position, that we're not entitled to it? So from that, theóand somebody else, counsel, said I want to take upóyou know, I think there may be a mistake in our review of this, and we cite it in our brief, that mandamusófor a party to obtain mandamus relief, it has to beóit has to be entitled to it, not at the time they file their complaint, not at the time that they add that as a count to an amended complaint, but at the time the court enters it. You have to be entitledóshow that you're entitled to mandamus at the time the court grants that relief. So this idea that we had to have that right at the very beginning is simply incorrect. It's at the time the court enters it. And, of course, we'veówithout Judge Dugan nudging along to review our building plans, I'm not sure it would have happened. And that's why his involvement was obviously necessary. So on May 31, they arrived at the court, and as Judge Dugan directed, we brought the architects and people with us to resolve any last-minute questions, and we had this exchange, and the court determines that we're entitled to mandamus relief. It enters the order, directs them to issue a building permit within a few days, and then they fail to do so. They fail to do so. Notablyóso I'm moving on to the contempt side. Notably, they did not seek a petition to stay. The prudent thing to do, when the court enters an order directing you to do something by a certain date, is if you don't agree with it, file a notice of appeal, get us over here, and file a petition to stay over here, which they eventually did some time later. Or before you are required to take that action that you object to, file a petition to stay in the circuit court. That didn't happen. June 5th or 7th, the date on which they were to give us a building permit, that came and went. A week or so later, I contact counsel. Hey, what's going on? Did you get a building permit? What's your plan? What are you going to do? Well, we plan to file a motion to reconsider. Okay? But that doesn't excuse non-performance of something the court has directed you to do. So I wait another week or sometime more, some days, and I file the petition for contempt notice for hearing on June 27th. At this point, about 20 days or so after they were to have issued the building permit. And the night before that hearing, they filed an 80-page motion to reconsider. An 80-page motion to reconsider. And I think the attitude was, well, since we plan to file a motion to reconsider at some point, therefore, that must excuse our performance on the court's order in the meantime. I mean, imagine the mischief if that were the case, right? No matter what, parties and litigants cannot ignore a court's order. And it put Judge Dugan in an unfortunate situation, an uncomfortable situation, whereby he was compelled to have to grant our motion for consent, which, as he indicated, was the first time he had ever had to do that, because there was absolutely no legitimate excuse for their failure to give us a building permit. But even then, he was generous. He was patient. He said, I'll give you one. Before the $500 per day fine starts, I'm going to give you one more chance. Give him a building permit by tomorrow. Or I forget if it was 24 or 48 hours. Just give it to him. And once again, nothing happened. Nothing happened. So they certainly claim that the motion for contempt or, I'm sorry, motion to reconsider stayed. There was some conversation about that. And I know Your Honor asked counsel a question about it. There is not a welcome case law out there regarding whether filing a motion to reconsider stays a mandamus direction. We signed a statute that limits it to injunctive relief and declaratory judgments. So we did look at the legislative history, and it clearly indicates that it's to prevent people who ignore court orders, and even the legislative history even used the word mandates. Thank you. Thank you, counsel. Reba. Thank you, Your Honor. I want to quickly begin by identifying and reading a brief expert from the plaintiff appellee's brief regarding the assertion that whether or not the ARL is expressly incorporated into the City of Alton City Code. On page 21, the first main paragraph, the ARL cannot apply to this dispute simply because Alton has not expressly adopted it. Two main provisions of Alton City Code arguably apply to building permit applications, Title IX, Alton's building code, and Title XI, Alton zoning ordinance. Neither of these titles expressly adopt the ARL, and the limited portions where the ARL might have been adopted do not apply to building permit disputes. Again, I previously cited Title XI, Chapter 13, Section 6 expressly adopts the Administrative Review Act as may be modified, which, of course, was by the modern Administrative Review Law. Does Title XI, the section that you're referring to, does it specifically apply to building code? It expressly applies to any person that is adversely affected by a decision regarding the application of the zoning ordinance. It can appeal to the Board of Appeals. If they do not receive the relief they want from the Board of Appeals, they can proceed for judicial review under the ARL. You just said that it applies to anyone who is dissatisfied with the decision of the zoning board. Does that also carry over and suggest that it applies to the building? I will directly answer that question after I just differentiate one thing real quick. The decision regarding the applicability of the plan development procedures is a decision made that the plan development procedures are all set forth within the zoning ordinance and a decision made regarding their applicability is made by the zoning administrator, subject to the Board of Appeals under Title XI. Title IX relates to the building code. It has its own provisions relating to appeals for decisions regarding the building codes. Does it also then adopt what you're talking about there? It does not, Your Honor. It expressly provides for statutory writ of certiorari after appealing to the Board of Appeals regarding that decision. You don't quote that in your brief or your reply brief? That section that directly applies to the building code?  Sure. I believe I have identified section 9-2-5 within, I thought, both of my briefs, certainly within my appellant's brief itself. But in regard to the section that you're reading from, the quote from the plaintiff on page 21 of their brief, your response to that, you quote Title XI, section 13-6, but you don't in that argument specifically address the provision in the building code, which you're referring to now. Is that correct? Correct, Your Honor. Okay. The point that I just read from the appellant's brief says that the ARL is not included in Title XI, and my point here is to suggest that it is expressly included. Sure. Within the briefs, we've also said that we did make a final decision. Well, let me back up. Sorry. Let me hold on one second, because what you just stated was that that quote is suggesting that it was not, that the Senate group was arguing that it was not part of Title XI. In fact, that quote also says it was not part of Title IX and Title XI. Correct, Your Honor. And you addressed that it is a part of Title XI, but you've left out anything that suggests it's part of Title IX. I'm admitting that the ARL is not expressly incorporated into Title IX. Okay. What is there instead is a Board of Appeals for building code decisions and a statutory writ of certiorari for judicial review of those building code-related decisions. That is further down. Okay. All right. Plaintiff's counsel has made it clear that the application upon which they complained the City of Alton failed to act was the one filed on November 16, 2018. Again, that's 11 days after plaintiff initiated this action. It is incongruent with general understandings of time and causation for the failure to act on an application filed after a lawsuit was filed excuses the need to exhaust your administrative remedies. Thank you, counsel. The Court will take this matter under advisement and issue its decision in due course. The Court will leave at a brief recess.